James **REALE**, Elizabeth **McAlister**, Max J. **Obuszewski**, Appellants,

v.

**UNITED STATES**, Apellee.

**Nos. 89–188, 89–189 and 89–253.**

District of Columbia Court of Appeals.

Argued Feb. 22, 1990.
Decided April 18, 1990.

---

**14**

Phyllis Joan Baron, Silver Spring, Md., appointed by this court, for appellants.

Margaret A. Flaherty, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Washington, D.C., John R. Fisher, and Helen M. Bollwerk, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TERRY and STEADMAN, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM:

After a jury trial, appellants were convicted of disorderly conduct within the United States Capitol. D.C.Code § 9–112(b)(4) (1989 Repl.).[1] Relying on our decision in *Wheelock v. United States*, 552 A.2d 503 (D.C.1988), they contend that the trial court erred in refusing to instruct the jury that the "tourist standard" is an element of the offense of disorderly conduct. They also assert that the court improperly prohibited them from bringing the concept of jury nullification to the attention of the jury, and erred in denying them the opportunity to assert the defense of necessity. We affirm.

On October 6, 1988, appellants were sitting in the public galleries of the House of Representatives chamber while the House was in session. Appellants McAlister and Reale stood up, and while shouting "homes

---

1. Appellants were also convicted of demonstrating within a United States Capitol Building. D.C.Code § 9–112(b)(7) (1989 Repl.). At sentencing, the trial court vacated these convictions, and they are not a subject of this appeal.

not bombs," they attempted to display a banner. The presiding officer in the House hit his gavel and asked the Capitol Police officers then on duty to remove the disturbance from the gallery. At approximately the same time, appellant Obuszewski stood up and began speaking loudly about the issue of homelessness, and was immediately removed by another officer.

■ Appellants contend that the trial court should have instructed the jury that the "tourist standard" is an element of the offense of disorderly conduct proscribed by D.C.Code § 9–112(b)(4) (1989 Repl.).[2] They argue that, pursuant to the "tourist standard," they could not be convicted of disorderly conduct unless the government proved that their actions were more disruptive than those of tourists and others routinely permitted in the Capitol Building. *See Wheelock v. United States, supra,* 552 A.2d at 508.

■ An explanation of the "tourist standard" was properly omitted from the jury instructions in this case because it is not an element of any offense. Rather, the standard is a means of determining if a statute, as applied in a particular case, is constitutional. The issue of a statute's constitutionality arises only where it is raised as a defense to prosecution. *See id.* at 506.[3] Thus, the government need not establish the constitutionality of its statutes each time it prosecutes a defendant.

■ Appellants next contend that the trial court erred in denying them the opportunity to inform the jurors about the power of jury nullification. They also argue that the court's instructions effectively prohibited the jury from exercising this power. The common-law doctrine of jury nullification permits jurors to acquit a defendant on the basis of their own notion of justice,

even if they believe he or she is guilty as a matter of law. *Watts v. United States,* 362 A.2d 706, 710 (D.C.1976). While we cannot reverse such an acquittal, *see Fong Foo v. United States,* 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), we do not encourage jurors to engage in such practice. Thus, we have upheld convictions in cases where, as here, the trial court instructs the jury that it is obligated to find the defendant guilty if the government meets all the elements of the charged offense. *Watts, supra,* 362 A.2d at 710–11.

■ Finally, appellants argue that the trial court improperly denied them the opportunity to assert the defense of necessity. The necessity defense excuses criminal actions taken in response to exigent circumstances. *Morgan v. Foretich,* 546 A.2d 407, 411 (D.C.), *cert. denied,* — U.S. —, 109 S.Ct. 790, 102 L.Ed.2d 781 (1988). The defense does not apply where there is a legal alternative available to the defendant, or where the defendant's actions could not have directly prevented the anticipated harm. *Griffin v. United States,* 447 A.2d 776, 778 (D.C.1982), *cert. denied,* 461 U.S. 907, 103 S.Ct. 1879, 76 L.Ed.2d 810 (1983). Here, appellants could have made their views known to Congress in many ways which did not violate the law. Furthermore, their protest could not have had any immediate impact on the crisis of homelessness.

*Affirmed.*

---

2. D.C.Code § 9–112(b)(4) (1989 Repl.) provides in pertinent part:
    (b) It shall be unlawful for any person ... willfully and knowingly:
        *       *       *       *       *       *
    (4) To utter loud, threatening, or abusive language, or to engage in any disorderly or disruptive conduct ... within any of the Capitol Buildings with intent to impede, disrupt, or

disturb the orderly conduct of any session of the Congress. ...

3. Appellants' argument that without a tourist standard, the disorderly conduct statute's use of words like "loud" is unconstitutionally vague is belied both by the facts here and by the requirement in this statute that the defendant have an "intent to impede, disrupt, or disturb."